STUCKY, Judge
(dissenting):
The military judge did not err in declining to grant the challenge for cause against LTC Cook. In the first place, the judge did significantly more than simply invoke the liberal grant mandate on the record; he discussed LTC Cook’s responses to voir dire and analyzed his demeanor and impartiality in denying the challenge. Consequently, his analysis is entitled to deference. See United States v. Clay, 64 M.J. 274, 276 (C.A.A.F.2007).
Second, the military judge’s decision was the correct one. It is settled that “ ‘implied bias should be invoked rarely.’ ” Id. at 277 (quoting United States v. Leonard, 63 M.J. 398, 402 (C.A.A.F.2006)); see also United States v. Lavender, 46 M.J. 485, 489 (C.A.A.F.1997) (“[Ajppellant did not carry his burden at trial of showing that his case is the ‘rare exception’ justifying use of the implied-bias doctrine.”).- In United States v. Downing, this Court upheld a military judge’s denial of a challenge for implied bias against a member who was a professional colleague and friend of trial counsel, noting that an objective observer could distinguish between that relationship and one between “individuals whose bond of friendship might improperly find its way into the members’ deliberation room.” 56 M.J. 419, 423 (C.A.A.F.2002).
There is no evidence in this case that the trial counsel and LTC Cook were personal friends, or that there existed any special bond between them that might undermine *37 the fairness of this court-martial. In a year’s time, trial counsel had advised LTC Cook only “[a] dozen” times. They never discussed Appellant’s case substantively. Further, LTC Cook specifically affirmed at voir dire that his relationship with trial counsel “will not affect my ability to be fair and impartial in this case.” These facts establish that the relationship consisted of “formal and professional” contact “not indicative of special deference or bonding,” and that it was therefore permissible for LTC Cook to sit on the panel. United States v. Richardson, 61 M.J. 113, 119 (C.A.A.F.2005).
The majority states that because LTC Cook trusted the advice of trial counsel, we should question LTC Cook’s judgment and impartiality. United States v. Peters, 74 M.J. 31, 35-36 (C.A.A.F.2015). It also relies on the words, “see you tomorrow,” as evidence of bias, as though the sign-off statement — following a discussion of business matters — was indicative of special deference or bonding. Id. at 35. And the majority strongly criticizes trial counsel’s endorsement of LTC Cook’s character. Peters, 74 M.J. at 33, 35-36. But the military judge explicitly and correctly disavowed consideration of trial counsel’s endorsement, interrupting him to say: “Captain Krupa, I’m going to stop you there. We’re not going to consider things that haven’t been admitted in this court, okay. Your own, outside of court, understanding of Colonel Cook is not relevant.” Rejecting trial counsel’s assessment of LTC Cook, the military judge made his own assessment of LTC Cook’s demeanor and responsiveness to voir dire questions, and decided to deny the challenge accordingly-
I also do not see how trial counsel’s relationship with the panel member in this case is distinguishable from that in United States v. Castillo, 74 M.J. 39, 2015 WL 591751 (C.A.A.F.2015). There, the trial counsel served with and provided military justice assistance to each of the four challenged members. See id. at 41-42. One member met regularly with trial counsel to discuss ongoing military justice matters within his battalion. Another consulted with trial counsel regarding an officer separation board resulting from allegations of larceny and rape. Both viewed trial counsel’s legal advice to be sound. The majority has not explained why the relationship in Peters “exceeds the norm,” 74 M.J. at 36, whereas the relationships in Castillo were so minor as to merit little mention of their relevance to implied bias challenges. Castillo, 74 M.J. at 43.
Finally, the majority appears to expand the ambit of the “public perception” test contrary to óur case law by writing that the implied bias test “may well reflect how members of the armed forces, and indeed the accused, perceive the procedural fairness of the trial as well.” Peters, 74 M.J. at 34. The accused’s perception of the fairness of his trial has never been part of the implied bias test.
I agree that it is proper for counsel and military judges to explore professional contacts between panel members and trial or defense counsel, id. at 35, and in other circumstances such relationships might result in findings of implied bias. But this is not such a case. Under these circumstances, a public observer familiar with the military justice system would not doubt the fairness of the trial solely because of this professional relationship. I would affirm.