# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
CAMPANELLA, SALUSSOLIA, and FLEMING
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Specialist JORDAN T. ELIE**
**United States Army, Appellant**

ARMY 20160112

Headquarters, 7th Infantry Division
Jeffery D. Lippert, Military Judge
Lieutenant Colonel James W. Nelson, Acting Staff Judge Advocate

For Appellant: Lieutenant Colonel Melissa R. Covolesky, JA; Captain Patrick J. Scudieri, JA; Captain Daniel C. Kim, JA (on brief).

For Appellee: Lieutenant Colonel Eric K. Stafford, JA; Captain Joshua B. Banister, JA (on brief).

16 January 2018

---------------------------------
MEMORANDUM OPINION
---------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

FLEMING, Judge:

In this case we set aside a finding of guilty as to one specification of attempted abusive sexual contact and affirm a finding of guilty as to one specification of sexual assault in light of our superior court's decisions in *United States v. Hills*, 75 M.J. 350 (C.A.A.F. 2016), *United States v. Hukill*, 76 M.J. 219 (C.A.A.F. 2017), and *United States v. Guardado*, __ M.J. __, 2017 CAAF LEXIS 1142 (C.A.A.F. 12 Dec. 2017).

An enlisted panel sitting as a general court-martial convicted appellant of one specification of attempted abusive sexual contact and one specification of sexual assault in violation of Articles 80 and 120, Uniform Code of Military Justice [UCMJ], 10 U.S.C. § 880 and 920 (2012). The convening authority approved the adjudged sentence of a dishonorable discharge, confinement for forty-two months, forfeiture of all pay and allowances, and reduction to the grade of E-1.

ELIE—ARMY 20160112

Appellant's case is before this court for review pursuant to Article 66, UMCJ. Appellant asserts two assigned errors which both merit discussion, one of which warrants relief. Pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), appellant personally raises additional issues, which we find meritless.

**BACKGROUND**

Appellant was charged with one specification of abusive sexual contact involving Private First Class (PFC) HW and one specification of sexual assault involving PFC AV. The sexual nature of the offenses led to extensive voir dire of the panel members.[1]

Four members were identified as participants of the installation sexual assault review board (SARB). During individual voir dire, the four members collectively described the SARB as an overview briefing provided to the commanding general and installation staff on local sexual assault cases. The overview briefing presented only limited generic facts because the SARB's purpose was to not resolve individual cases but to identify installation trends to prevent future incidents and to ensure services were available to alleged victims. The members' answers established that the SARB overview briefs contained less information on a particular case than a court-martial flyer. All four members stated they had no knowledge of appellant's case and their SARB participation would not impact their fairness and impartiality. Defense counsel challenged all four members for implied bias on the sole grounds of their SARB membership. After considering the liberal grant mandate, the military judge denied the implied bias challenges against each member.

The trial proceeded with the four challenged members, but a lengthy defense recess was granted after the direct testimony of the first government witness, PFC AV.[2] Prior to releasing the members for this recess, the military judge instructed them to not discuss the case with anyone, including among themselves, and to "[j]ust forget that it is happening until we call you back into the courtroom."

---

[1] During general voir dire, after being asked numerous questions about: 1) sexual offenses; 2) oral and written comments from senior civilian and military leaders regarding sexual offenses; and 3) the members' receipt of sexual offense training, the members affirmed their ability to be fair and impartial.

[2] After PFC AV's direct testimony regarding his high level of intoxication the night of the alleged offense, an approximate ten-week recess followed to allow the defense to obtain an expert in forensic toxicology.

A few days after the recess, that instruction became moot when three of the four SARB panel members attended a SARB meeting where appellant's case appeared. When appellant's trial reconvened, extensive individual voir dire of the three members by the military judge and the parties ensued.

Three members described being present at a SARB meeting where generic facts, such as unit, gender, and age of the alleged offender and victims, appeared at the beginning of a case overview. One panel member, Colonel (COL) LD, immediately stopped the presentation because "the circumstances looked very familiar to [appellant's] case because [the panel] had just had opening arguments so that is what reminded [him.]" The three members again affirmed their SARB membership would not impact their ability to fairly and impartially decide appellant's case.

Defense counsel conceded "[t]here is nothing in [the members'] answers today nor was there the first time that suggested that they knew something," but asserted the members' mere participation on the SARB constituted implied bias. After again considering the liberal grant mandate, the military judge denied the implied bias challenges.

The military judge found the information received by the members was very generic, provided no new information, and the flyer in appellant's court-martial provided more information regarding the case than the SARB overview. As to the impartiality and fairness of the three members, the military judge ruled:

> [The members] recognize that the determination of the facts of this case are to be based solely on the evidence presented here in court . . . [t]hey all stated that they understood their role in the court-martial and that each case was to be determined on its own merits. And that there was no expected outcomes . . . and their attendance at the SARB, this particular SARB meeting, or any SARB meeting, would have no influence on them whatsoever.
>
> The court finds the fact that [COL LD] and the other two members acted to ensure no further discussion of the case . . . at this particular meeting demonstrate these members' understanding of their roles as court members as independent fact-finders. . . .

After both parties rested their case, the military judge heard the government motion, under Military Rule of Evidence [Mil. R. Evid.] 413, to use propensity evidence of the PFC HW offense for the PFC AV offense and of the

3

PFC AV offense for the PFC HW offense. The defense objected to the government's request, thereby preserving the error. The military judge granted the government's motion and instructed the panel they could consider for propensity purposes evidence of the PFC HW offense for the PFC AV offense and evidence of the PFC AV offense for the PFC HW offense. Appellant was convicted of an attempted abusive sexual contact involving PFC HW and a sexual assault involving PFC AV.

## LAW AND DISCUSSION

### *Implied Bias*

Rule for Court-Martial [R.C.M.] 912 (f)(1) states "[a] member shall be excused for cause whenever it appears that the member . . . [s]hould not sit as a member in the interest of having the court-martial free from substantial doubt as to legality, fairness, and impartiality." R.C.M. 912 (f)(1)(N). "Implied bias is an objective test, 'viewed through the eyes of the public, focusing on the appearance of fairness.'" *United States v. Clay*, 64 M.J. 274, 276 (C.A.A.F. 2007) (quoting *United States v. Rome*, 47 M.J. 467, 469 (C.A.A.F. 1998)). A court reviews the totality of the circumstances to determine if "most people in the same position would be [biased]." *United States v. Strand*, 59 M.J. 455, 459 (C.A.A.F. 2004) (quoting *United States v. Napolitano*, 53 M.J. 162, 167 (C.A.A.F. 2000)). A military judge's rulings on implied bias challenges for cause are "reviewed under a standard less deferential than abuse of discretion, but more deferential than de novo." *United States v. Woods*, 74 M.J. 238, 243 (C.A.A.F. 2015) (quoting *United States v. Downing*, 56 M.J. 419, 422 (C.A.A.F. 2002)). When a military judge considers the liberal grant mandate for defense challenges for cause and puts his reasoning on the record, his exercise of discretion will rarely be reversed. *Clay*, 64 M.J. at 277.

After reviewing the totality of the circumstances, we find the military judge did not abuse his discretion in initially denying the defense challenges for cause against four members or in subsequently denying the challenges for cause against three of the four members. In both instances, the members did not attempt to hide their SARB participation. They received extensive voir dire from the military judge and the parties regarding sexual offenses and their SARB participation. They received less information about the underlying facts of appellant's case at the SARB meeting than from appellant's court-martial flyer. When they faced receiving information at the SARB regarding appellant's case they took immediate and proactive steps to stop the presentation.

Membership on a SARB does not equal a per se implied bias challenge for cause as proffered by appellant. Making such a presumption would eviscerate the longstanding precedent to review the totality of the circumstances to

determine if a military judge abused his or her discretion in denying an implied bias challenge. As recently recognized by our superior court, "[t]o be clear, we do not hold that participation on a SARB or similar entity, or passing knowledge of the facts of a case constitutes actual or implied bias." *United States v. Commisso*, 76 M.J. 315, 323 n. 5 (C.A.A.F. 2017). It is a fact-by-fact determination whether a member's SARB participation, coupled with his or her voir dire responses, constitutes an implied bias challenge for cause.

In appellant's case, the challenged members' responses regarding sexual offenses and their SARB participation established their understanding and ability to independently decide appellant's case based solely on the applicable facts and law. For example, when the military judge asked, "do any of you believe that the Army has a specific policy for any particular outcome for cases involving sexual assault?" all members responded in the negative. When the military judge asked if each of the panel members agreed "to use your own independent judgment in this court-martial and base your assessment of the evidence and decision on the evidence in this case based solely on what you see in court here today, as far as evidence goes, and the instructions that I will give you?" all of the panel members answered in the affirmative.

After reviewing the totality of the circumstances of this case, this court holds a reasonable member of the public, sitting in the courtroom and hearing the members' responses, would not harbor a substantial doubt as to the fairness of appellant's court-martial. Finding the military judge did not abuse his discretion in denying the defense challenges for cause as to each of the four individual members, this court is unpersuaded by appellant's argument that challenges for cause should be granted collectively against a group of members because four of eight panel members served on the SARB.

### Mil. R. Evid. 413

After appellant's court-martial, our superior court held it is constitutional error for a military judge to give an instruction under Mil. R. Evid. 413 to a panel permitting the use of one charged offense of sexual misconduct to be used as propensity evidence in assessing another charged offense of sexual misconduct. *Hills*, 75 M.J. at 352. If instructional error is found when there are constitutional dimensions at play, this court tests for prejudice under the standard of harmless beyond a reasonable doubt. *United States v. Wolford*, 62 M.J. 418, 420 (C.A.A.F. 2006).

The inquiry for determining whether constitutional error is harmless beyond a reasonable doubt is whether, beyond a reasonable doubt, the error did not contribute to the defendant's conviction or sentence. *United States v. Kreutzer*, 61 M.J. 293, 298 (C.A.A.F. 2005). An error is not harmless beyond a reasonable doubt when

there is a reasonable possibility the error complained of might have contributed to the conviction. *United States v. Moran*, 65 M.J. 178, 187 (C.A.A.F. 2007); *United States v. Chandler*, 74 M.J. 674, 685 (Army Ct. Crim. App. 2015). "There are circumstances where the evidence is overwhelming, so we can rest assured that an erroneous propensity instruction did not contribute to the verdict by 'tipp[ing] the balance of the members' ultimate determination.'" *Guardado*, __ M.J. at __, 2017 CAAF LEXIS, at *11 (C.A.A.F. 2017) (quoting *Hills*, 75 M.J. at 358). Here, the military judge's propensity instruction was erroneous so the issue is whether to affirm the findings of guilty involving PFC AV and PFC HW.

As to the finding of guilty as to PFC AV, we are convinced beyond a reasonable doubt that the panel convicted appellant based on the strength of the evidence alone. Private First Class AV testified that after drinking heavily he awoke in appellant's room with his penis in appellant's mouth and he was "shocked." Appellant told law enforcement, in an admitted government video, that: PFC AV was drinking heavily; that appellant put PFC AV on the bed, pulled down PFC AV's pants, and put PFC AV's penis in his mouth; and PFC AV's reaction was "shock." Appellant stated be felt "bad as hell" and apologized to PFC AV. The government admitted the alcohol questionnaire filled out by appellant, which described PFC AV the night of the offense as "tumbling in/out of conscious" and "sleepy." Specialist (SPC) JJ, PFC AV's roommate who retrieved PFC AV from appellant's room after the offense, described PFC AV as "pretty close to unconscious" and "on the borderline of being unconscious." While defense counsel attacked PFC AV's and SPC JJ's credibility, their testimony closely mirrors appellant's description of the offense involving PFC AV.

We are not convinced beyond a reasonable doubt that the use of propensity evidence of the offense against PFC AV did not contribute to the finding of guilty on the offense against PFC HW. The offense involving PFC HW was supported primarily by his testimony.[3] Although appellant's video statement provided some corroboration of PFC HW's testimony, the strength of this evidence, coupled with PFC HW's testimony, did not rise to the level to convince this court beyond a reasonable doubt that the use of propensity evidence from PFC AV's offense did not "'[tip] the balance of the members' ultimate determination.'" *Id.* Thus, the finding of guilty of the offense involving PFC HW and the sentence cannot stand.

---

[3] While witness testimony alone may convince a court beyond a reasonable doubt that a Mil. R. Evid. 413 propensity error is harmless, PFC HW's testimony did not.

6

ELIE—ARMY 20160112

## CONCLUSION

The finding of guilty of Specification 1 of the Charge is SET ASIDE. A rehearing on this set aside specification is authorized. The remaining findings of guilty are AFFIRMED. The sentence is set aside. A sentence rehearing is authorized. This case will be returned to the same or a different convening authority.

Senior Judge CAMPANELLA and Judge SALUSSOLIA concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court